IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

RANDY T. MAYO     PETITIONER
ADC #134578

V.     NO. 5:08cv00313 BSM-JWC

LARRY NORRIS, Director,     RESPONDENT
Arkansas Department of Correction

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

### INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge Brian S. Miller. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk within fourteen (14) days after being served with the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include a "Statement of Necessity" that sets forth the following:

    1.     Why the record made before the Magistrate Judge is inadequate.

2. Why the evidence to be proffered at the requested hearing before the District Judge was not offered at a hearing before the Magistrate Judge.

3. An offer of proof stating the details of any testimony or other evidence (including copies of any documents) desired to be introduced at the requested hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, AR 72201-3325

## **RECOMMENDED DISPOSITION**

Randy T. Mayo, an Arkansas Department of Correction (ADC) inmate, brings this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (**doc. 2**), challenging certain parole conditions as well as the validity of his underlying criminal convictions. Respondent asserts several reasons for dismissal (doc. 8), to which Petitioner has replied (doc. 11). For the reasons that follow, the petition should be **denied**.

I.

Following entry of a negotiated guilty plea in the Circuit Court of Washington County, Arkansas, Petitioner was convicted of possession of a controlled substance (methamphetamine) and possession of pseudoephedrine. Judgment was entered on

October 28, 2003, sentencing him to a forty-eight month term of probation. (Resp't Ex. A [doc. 8-3, at 14-19].)[1]

On March 1, 2005, the state petitioned to have Petitioner's probated sentence revoked for violating the conditions of his probation. (*Id.* at 21-22, 58-60.) On October 13, 2005, the circuit court held a hearing and granted the state's petition, finding that Petitioner had violated his probation conditions by failing to maintain steady employment, failing to pay his supervision fees or other obligations, and committing residential burglary (doc. 8-2, at 9-18). Judgment was entered on October 17, 2005, sentencing Petitioner to sixty months of imprisonment in the ADC (doc. 8-3, at 61-64).

Petitioner appealed (id. at 66-67). His counsel filed a no-merit brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), discussing matters in the record that might arguably support an appeal and including a statement as to why counsel considered the points raised to be without merit (doc. 8-2, ). Petitioner was notified of his right to file a pro se statement of points for reversal, but did not do so. The Arkansas Court of Appeals affirmed, finding no merit to the appeal. *Mayo v. State*, No. CACR 06-36, 2007 WL 104938 (Ark. Ct. App. Jan. 17, 2007) (unpub. op.).

On March 20, 2007, the Arkansas Parole Board entered an order of conditional release, imposing a number of conditions, including: (1) maintaining approved employment; (2) obtaining approval before staying away overnight from his approved residence, changing his place of residence, or traveling; (3) refraining from associating with convicted felons or persons engaged in criminal activity. (Resp't Ex. C [doc. 8-5, at 1-3.) Petitioner

---

[1]Resp't Ex. A (docs. 8-2, 8-3) is the abstract, addendum and brief submitted by Petitioner to the Arkansas Court of Appeals in his appeal of the probation revocation.

signed the order and the listed "conditions of release," stating that he agreed to comply with all conditions and understood that his failure to comply could result in revocation of his release. (Id. at 2-3.) Petitioner was released from the ADC the same day. (Resp't Ex. B [doc. 8-4, at 5].)

On April 28, 2008, a parole revocation hearing was held, at which Petitioner was represented by counsel. The hearing examiner summarized the testimony and set forth his findings in a written decision. (Resp't Ex. D & E [docs. 8-6, 8-7].) According to the summary, Petitioner's parole officer testified that Petitioner informed him on January 24, 2008, that he did not have a residence. The officer testified that Petitioner was living in a tent behind a residence, and that the property-owner would not allow Petitioner to continue living there. The officer testified that he had arranged a residence plan to Sober Living for Petitioner, which Petitioner had refused. According to the summary, Petitioner testified at the hearing that his religion would not allow him to have a stable residence or to work, that he was in training to lead a church in Fayetteville but had no idea when that would happen, and that having a steady residence would interfere with his religion. The hearing examiner noted in his decision that staff had attempted several residence placements for Petitioner, but that he refused to live at the possible sites. The hearing examiner found that, based on the evidence, Petitioner had violated the parole condition regarding residence/travel. His parole was thus revoked, and he was returned to ADC custody. (Resp't Ex. D [doc. 8-6, at 1-3].)

In an affidavit, the hearing examiner stated that Petitioner appeared before the Parole Board again on September 18, 2008. He was granted parole but, as of December 22, 2008, remained in ADC custody due to his refusal to present a proper residency plan.

4

(Resp't Ex. E [doc. 8-7].) The ADC website shows that he is currently housed at the ADC's East Arkansas Regional Unit.

II.

As Respondent has done, the Court has liberally construed Petitioner's pleadings, finding that he raises three claims:

(1) The parole condition prohibiting him from associating with convicted felons violates his First Amendment right to freely practice his religion;

(2) The parole condition requiring him to maintain a residence violates his First Amendment right to freely practice his religion; and

(3) His criminal convictions for possession of methamphetamine and pseudoephedrine are contrary to his First Amendment right to freely practice his religion.

In his pleadings, Petitioner quotes extensively from the Bible and contends that the State of Arkansas and the Arkansas Parole Board are violating his constitutional right to exercise his religion as a disciple of Jesus Christ. First, he contends that the parole condition against associating with felons is contrary to passages in the Bible instructing Christ's disciples to teach and minister to all persons, and to live and eat with other believers (doc. 2, at 8). As to the parole restriction for maintaining a residence, Petitioner cites Bible verses where Christ commanded his disciples to forsake their homes, jobs and families and follow him (doc. 2, at 11-12). He quotes Acts 5:29, "We ought to obey God rather than men" (doc. 2, at 16; doc. 11, at 6).

Regarding his convictions, Petitioner contends that the First Amendment protects his God-given right to possess, "plant[,] cultivate or manufacture anything that the Creator gave to man for free," including "all things that drugs and alcohols are made from" (doc.

5

2, at 13; doc. 11, at 9). He asserts that God did not intend for people to be imprisoned for "possessing, selling, manufacturing, cultivating, buying, trading, or consuming" things that God "created and g[a]ve to all men freely to enjoy" (doc. 11, at 7).

Petitioner also challenges the sentences he received upon probation revocation because the items he stole ("21 boxes of pills ... used to make meth") were worth only about $72 and the methamphetamine conviction was based on an empty vial that had contained methamphetamine the day before (doc. 2, at 18-19; doc. 11, at 10-11). He says his sentences exceed what "God's judgment would have been" (doc. 2, at 17). He also challenges the competency of his counsel in advising him to enter a guilty plea, and says he took the plea bargain out of fear (doc. 11, at 11).[2]

III.

Respondent contends that Petitioner's claims regarding the parole conditions are not proper for habeas review and instead should have been raised in a civil rights complaint pursuant to 42 U.S.C. § 1983 (doc. 8, at 6, 8-9). While a prisoner may seek relief under § 1983 that will invalidate the state procedures used to determine parole

---

[2]Petitioner does not rely on either the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C. § 2000cc, or the Religious Freedom Restoration Act of 1993 (RFRA), 42 U.S.C. § 2000bb, and neither appears applicable. RLUIPA prohibits state prisons that receive federal funds from imposing "a substantial burden on the religious exercise of a person residing in or confined to" the prisons, unless the burden furthers "a compelling governmental interest," and does so by "the least restrictive means." 42 U.S.C. § 2000cc-1(a) & (b); *see Cutter v. Wilkinson*, 544 U.S. 709, 712, 715-16 (2005). However, Petitioner's habeas claims are not premised on the denial of religious freedoms while confined in the ADC, appearing to argue only that he would not be imprisoned at all if he had been permitted to freely exercise his religion. Additionally, the Supreme Court has invalidated RFRA as applied to actions by the states and their subdivisions. *Cutter*, 544 U.S. at 715; *see Olsen v. Mukasey*, 541 F.3d 827, 830 (8th Cir. 2008), *cert. denied*, 129 S. Ct. 2178 (2009) (state controlled substances laws not subject to RFRA).

eligibility or suitability, he may not utilize § 1983 when he seeks immediate or speedier release into the community. *Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005). Petitioner has been granted parole, and it appears that his release hinges only on approval of a plan. He alleges that "unless [he has] a home plan, there will be no release ... also unless [he] sign[s] their contract of stipulations there will be no release" (doc. 2, at 22). Liberally construing his allegations, he is contesting the conditions which are preventing his release on parole. As such, these claims are appropriately brought via a petition for writ of habeas corpus under *Wilkinson*.

Respondent also contends that Petitioner's parole-conditions claims should be dismissed because he failed to present them to the state courts first (doc. 8, at 6, 10-14). Because the Court finds that these claims do not entitle him to relief for other reasons, the exhaustion and procedural default issues regarding them need not be addressed. *See Khaalid v. Bowersox*, 259 F.3d 975, 978 (8th Cir. 2001) (declining to address "the complexities of the procedural bar issue" where the claim is more easily resolved on the merits); 28 U.S.C. § 2254(b)(2) (permitting federal court to deny habeas petition on merits notwithstanding applicant's failure to exhaust state remedies).

Respondent argues that the parole-conditions claims are foreclosed by the United States Supreme Court's decision in *Employment Division v. Smith*, 494 U.S. 872 (1990). The Court agrees.

The First Amendment to the Constitution protects an individual's right to freely exercise his religion. *Id.* at 876-77. This involves not only the right to "believe and profess whatever religious doctrine one desires," but also "the performance of (or abstention from)

7

physical acts" related to those beliefs. *Id.* at 877. The right of free exercise does not, however, "relieve an individual of the obligation to comply with a 'valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes).'" *Id.* at 879 (quoting *United States v. Lee*, 455 U.S. 252, 263 n.3 (1982)). Under *Smith*, a neutral, generally applicable law that burdens religious practices does not violate the free-exercise clause, even if not justified by a compelling governmental interest. *Id.* at 885-89; *City of Boerne v. Flores*, 521 U.S. 507, 514 (1997). A law is not neutral if its object is "to infringe upon or restrict practices because of their religious motivation." *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 533 (1993).[3]

Petitioner's First Amendment challenge to the parole conditions also must be analyzed in light of his status as a convicted criminal. The Supreme Court has recognized that "those who have suffered a lawful conviction" are properly subject to a "broad range of [restrictions] that might infringe constitutional rights in free society." *McKune v. Lile*, 536 U.S. 24, 36 (2002); *see United States v. Kincade*, 379 F.3d 813, 833-34 (9th Cir. 2004). A parolee is a convicted criminal who is released from prison before the completion of his sentence, on the condition that he abide by certain rules for the duration of his term. *Morrissey v. Brewer*, 408 U.S. 471, 477-78 (1972). As such, parolees may claim "only ... conditional liberty properly dependent on observance of special parole restrictions" that

---

[3] The First Amendment may bar application of a neutral, generally applicable law where, in addition to the right to free exercise of religion, other constitutional protections are implicated, such as freedom of speech or the press. *Smith*, 494 U.S. at 881-82. This is not such a case.

8

extend "substantially beyond the ordinary restrictions imposed by law on an individual citizen." *Id.* at 478, 480.

To accomplish the purpose of parole in helping individuals reintegrate into society, "[t]ypically, parolees are ... forbidden to have associations or correspondence with certain categories of undesirable persons ... , they must seek permission from their parole officers before engaging in specified activities, such as changing ... living quarters, [and they] must regularly report to the parole officer to whom they are assigned." *Id.* at 478. *See Samson v. California*, 547 U.S. 843, 851 (2006) (referring to *Morrissey*'s discussion of "permissible terms and conditions of parole").

Conditions restricting the freedom of parolees and probationers to associate with persons who have been convicted of crimes have been upheld against First Amendment challenges. *See United States v. Spilotro*, 786 F.2d 808, 816 n.5 (8th Cir. 1986) (citing illustrative cases). As explained by the Eighth Circuit, association conditions imposed on parolees "are reasonably and necessarily related to the substantial governmental interests in their rehabilitation and in the protection of the public from further crime." *Id.* Similarly, requiring a parolee to maintain an approved residence is "reasonably and necessarily related" to the government's substantial interest in helping parole officers maintain contact and properly monitor the parolee's conduct. *See Morrissey*, 408 U.S. at 478 (discussing importance of reporting requirements in providing parole officer with information about the parolee and putting officer "into the position in which he can try to guide the parolee into constructive development").

The two parole conditions that Petitioner specifically challenges – association with felons and maintaining a residence – are neutral, general restrictions commonly applied to parolees. In fact, the eleven conditions of release on Petitioner's parole, including these two, come from the standard form attached to the Parole Board's policy manual. *Compare* Resp't Ex. C [doc. 8-5, at 3] *with* Ark. Parole Board Policy Manual, at 26.[4] Both conditions are reasonably and necessarily related to the state's substantial interest in facilitating Petitioner's rehabilitation and reintegration into society. Nothing suggests that the object or intent of the parole conditions was to restrict religious practices. Petitioner was informed of the conditions, and he signed the order of release, stating that he agreed to comply with all conditions and understood that noncompliance could result in parole revocation. He admits that he refused the proposed residency placements and violated his parole conditions (doc. 11, at 6). Therefore, Petitioner's First Amendment right to freely exercise his religion did not relieve him of the obligation to comply with the parole conditions at issue, nor was that right violated by the revocation of his parole when he failed to comply.

Grounds 1 and 2 should be dismissed as without merit.

### IV.

All of Petitioner's claims challenging the validity of his criminal convictions and the sentence imposed upon probation revocation are clearly procedurally barred due to his failure to first raise them in state court.

---

[4] Available at http://www.arbop.org/PolicyDocuments/ABPManual_rev092408.pdf.

Before seeking federal habeas review, a state prisoner must first fairly present the substance of each claim to each appropriate state court, thereby alerting those courts to the federal nature of his claims and giving them an opportunity to pass upon and correct any constitutional errors made there. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *see* 28 U.S.C. § 2254(b) & (c) (requiring federal habeas petitioner to pursue all remedies available in the state courts). A federal habeas petitioner's claims must rely on the "same factual and legal bases" relied on in state court. *Interiano v. Dormire*, 471 F.3d 854, 856 (8th Cir. 2006). Claims in a federal habeas petition that were not presented in state court and for which there is no remaining state court remedy are procedurally defaulted. *Id.*

Where a procedural default has occurred, federal habeas review is permitted only if the petitioner can demonstrate (1) cause for the default and actual prejudice as a result of the alleged violation of federal law, or (2) that failure to consider the claims will result in a fundamental miscarriage of justice, that is, that a constitutional violation has resulted in the conviction and continued incarceration of one who is actually innocent. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Murray v. Carrier*, 477 U.S. 478, 496 (1986). If no cause has been shown, the prejudice element of the analysis need not be addressed. *McCleskey v. Zant*, 499 U.S. 467, 502 (1991).

As noted by Respondent, Petitioner could have preserved his free-exercise claim in his original criminal proceedings by going to trial and either filing a pretrial motion or moving for a directed verdict (doc. 8, at 14-15). *See Raymond v. State*, 118 S.W.3d 567, 568 (Ark. 2003); *Jones v. State*, 64 S.W.3d 728, 732 (Ark. 2002). Instead, he pleaded guilty to the criminal charges, thereby waiving at that time his right to a direct appeal of the

constitutionality of his convictions under Arkansas law. Ark. R. App. P.-Crim. 1(a) (2003). Upon revocation of his probation, Petitioner sought, through counsel, a direct appeal of the revocation decision and the sentence imposed. Counsel did not raise Petitioner's current free-exercise and other claims regarding his convictions and sentence and, although notified of his opportunity to file a pro se statement of points for reversal, Petitioner did not do so. At no time did he file a state petition for post-conviction relief. *See* Ark. R. Crim. P. 37.2(c) (post-conviction petition must be filed within sixty days of appellate mandate affirming conviction or ninety days of judgment following a guilty plea). His current claims are, therefore, defaulted.

To excuse his default, Petitioner says he assumed his appellate counsel would find all points for reversal. He said he received the court's document stating he "may" send a pro se pleading, but did not file anything because of the word "may." He asks that he not be penalized due to his ignorance of legal requirements (doc. 11, at 1, 3, 8).

Cause requires a showing of some impediment, external to the petitioner's defense and not fairly attributable to him, preventing him from constructing or raising his claims in state court or complying with the state's procedural rules. *Coleman*, 501 U.S. at 753. Pro se status and unfamiliarity with legal arguments and procedural matters are not sufficiently external to constitute cause excusing a procedural default. *Smittie v. Lockhart*, 843 F.2d 295, 298 (8th Cir. 1988). While trial or appellate counsel's ineffectiveness in failing to preserve a claim for review may constitute cause to lift a procedural bar, a habeas petitioner cannot rely upon such ineffectiveness as cause where he has not first properly presented the ineffectiveness claim to the state courts. *Edwards v. Carpenter*, 529 U.S. 446, 451-53 (2000) (ineffective assistance of counsel asserted as cause for procedural

12

default of another federal claim can itself be procedurally defaulted); *Schawitsch v. Burt*, 491 F.3d 798, 804 (8th Cir. 2007).

Here, Petitioner's unfamiliarity with the law and his reliance on his trial and appellate counsel do not constitute cause. He never challenged counsel's conduct in a pro se brief in his direct appeal, or in a post-conviction proceeding in state court. In addition, because there is no constitutional right to post-conviction counsel, he cannot blame his defaults there on the fact that he was proceeding without counsel during the period for seeking state post-conviction relief. *Burns v. Gammon*, 173 F.3d 1089, 1092-93 (8th Cir. 1999). Therefore, Petitioner fails to demonstrate cause.

Petitioner makes no attempt to fit within the demanding "fundamental miscarriage of justice" or "actual innocence" exception to the cause-prejudice requirement, which will permit federal habeas review only in the "extraordinary" case. *See Schlup v. Delo*, 513 U.S. 298, 324-31 (1995) (exception requires habeas petitioner to support his allegations of constitutional error with new reliable evidence not presented at trial, and to show, in light of the new evidence, "that it is more likely than not that 'no reasonable juror' would have convicted him"). Moreover, the narrow exception does not appear applicable, as Petitioner presents no evidence whatsoever of factual innocence, much less anything new and reliable. *Id.* at 316 ("Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim."); *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (exception is concerned with claims of actual as compared to legal innocence); *Abdi v. Hatch*, 450 F.3d 334, 338 (8th

13

Cir. 2006) (exception requires petitioner "to present new evidence that affirmatively demonstrates that he is innocent of the crime for which he was convicted").

Because he has not demonstrated cause and prejudice or actual innocence, Petitioner's claims regarding the validity of his underlying criminal convictions and sentence should be dismissed as procedurally barred.

Aside from his procedural default, Petitioner's First Amendment free-exercise claims cannot entitle him to federal habeas relief. Making an individual's obligation to obey "generally applicable prohibitions of socially harmful conduct" contingent upon the law's coincidence with his religious beliefs would permit him "to become a law unto himself," which "contradicts both constitutional tradition and common sense." *Smith*, 494 U.S. at 885 (quoting *Reynolds v. United States*, 98 U.S. 145, 167 (1878)). It is well-established that a claim of religious freedom cannot be used as a shield for criminal conduct. *See Cantwell v. Connecticut*, 310 U.S. 296, 306 (1940) ("Nothing we have said is intended even remotely to imply that, under the cloak of religion, persons may, with impunity, commit frauds upon the public"). In *Smith*, the Supreme Court held that the free-exercise clause permits a state to include religiously inspired peyote use within the reach of its general criminal prohibition on use of that drug. *Smith*, 494 U.S. at 874, 876-90. Other laws criminalizing the use of controlled substances also have been upheld against free-exercise challenges. *See, e.g., Olsen*, 541 F.3d at 832 (rejecting free exercise claim regarding sacramental use of marijuana; relevant controlled substances laws are neutral, generally applicable laws under *Smith*).

The laws challenged by Petitioner criminalizing the use and possession of methamphetamine, or of substances used to make methamphetamine, are neutral, generally applicable laws enacted to prohibit socially harmful conduct. Petitioner does not allege, and nothing suggests, that their object is to target, infringe upon or restrict religiously motivated conduct. Therefore, he cannot prevail on his free-exercise challenge to their validity or their application to his conduct.

Ground 3 should be dismissed.

V.

Liberally construing his pleadings, Petitioner also makes several complaints about prison life, asserting that he is exposed to circumstances and experiences which conflict with his religious beliefs, including prison staff corruption, availability of drugs, sexual immorality, profanity, and witchcraft (doc. 2, at 20-21; doc. 11, at 8). He also asserts that prison staff have refused his request to be placed in a solitary cell for his religious practices of prayer and fasting (doc. 2, at 20). These are challenges to the conditions of his confinement and are properly brought only in a 42 U.S.C. § 1983 complaint. If a habeas claim is not challenging the validity of a prisoner's conviction or sentence or the length of his state custody, a habeas court lacks the power or subject matter jurisdiction to grant relief. *Khaimov v. Crist*, 297 F.3d 783, 785-86 (8th Cir. 2002) (finding that habeas petitioner's claims regarding prison mail and segregation were improperly brought under § 2254 because they were not alleged to have illegally extended his period of confinement); *Kruger v. Erickson*, 77 F.3d 1071, 1073-74 (8th Cir. 1996) (dismissing habeas claims for lack of subject matter jurisdiction where prisoner sought injunctive relief

due to unconstitutional treatment but did not attack validity of convictions or state custody); *see Heck v. Humphrey*, 512 U.S. 477, 481-82 (1994) (prisoner's challenge to conditions of confinement should be brought under § 1983 so long as the relief sought does not have the effect of invalidating the underlying conviction).

These claims should be dismissed without prejudice to assertion in a § 1983 civil rights action.

VI.

For the reasons stated, Petitioner's claims regarding his parole conditions and the validity of his criminal convictions and sentence are without merit or procedurally barred, and they should be dismissed with prejudice. His claims regarding the conditions of his confinement should be dismissed without prejudice.

Therefore, this 28 U.S.C. § 2254 petition for writ of habeas corpus (doc. 2) should be **denied in its entirety**.

DATED this 18th day of December, 2009.

_____
UNITED STATES MAGISTRATE JUDGE